**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**JACKSON DIVISION**

**DEREK A.  WYATT**                                                                                  **APPELLANT**

**vs.**                                          **CIVIL ACTION NO. 3:10-cv-000436-HTW-LRA**

                                                **(Consolidated with)**

                                                **CIVIL ACTION NO. 3:10-cv-000449-DPJ-FKB**

**MARY E. McALISTER**                                                                              **APPELLEE**

_____

**ON APPEAL FROM**
**THE UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF MISSISSIPPI**
**JACKSON DIVISION**

**IN RE:**

**WYATT & McALISTER, PLLC**                           **CASE NO.09-04354-EE**
                                                       **CHAPTER 7**


                    ***********************\***


**REBUTTAL BRIEF**
**OF APPELLANT DEREK A. WYATT**

## <u>TABLE OF CONTENTS</u>

TABLE OF CONTENTS ..................................................................................... 2

TABLE OF AUTHORITIES .......................................................................... 3-5

REBUTTAL ARGUMENTS ........................................................................ 6-26

    I.      McAlister's assertion that the Bankruptcy Court "correctly concluded" that the Mississippi Limited Liability Company Act ("Ms LLC Act") required her approval vote for W&M to file its bankruptcy petition, is meritless and without support, legally or factually ............................. 6-26

    II.     McAlister's assertion that the Bankruptcy Court "correctly concluded" that McAlister's resignation as an attorney employed by W&M was not intended by McAlister to be a voluntary withdrawal from the membership of W&M, and was "correct in concluding" that McAlister was statutorily barred from voluntarily withdrawing as a member of W&M, is meritless and without support, legally or factually ........................... 6-26

CONCLUSION ............................................................................................    26

## TABLE OF AUHTORITIES

<u>CASES</u>

*Caldwell v. N. Miss. Med. Ctr.,*
956 So. 2d 888, 893-894 (Miss. 2007) ........................................................   10

*City of Jackson v. Lakeland Lounge of Jackson, Inc.,*
688 So. 2d 742, 747 (Miss. 1996) ............................................................   20

*Davis et al v. Chesapeake Appalachia, LLC et al,*
Civil Action No. 1:10-cv-23, (W.D. Va 2010)...................................................   26

*Dawson v. Townsend & Sons, Inc.,*
735 So. 2d 1131, 1140 (Miss. Ct. App. 1999) .....................................   20

*Dennis v. Travlers Ins. Co.,* 234 So.2d 624. 624 (Miss. 1970) ...................   10

*Ellzey v. Fyr-Pruf, Inc.,*
376 So.2d 1328, 1332 (Miss. 1979) ........................................................   8

*Evans v. Boyle Flying Serv., Inc.,* 680 So.2d 821, 825 (Miss. 1996).........   10,20

*Flippo v. CSC Associates III, L.L.C.,* 262 Va. 48, 56-57,
547 S.E.2d 216, 221 (2001). ....................................................................   9

*Foley v. Allied Interstate, Inc.,*
312 F. Supp. 2d 1279, 1283 (C.D. Cal. 2004) ......................................   26

*Kennington v. Hemingway*, 101 Miss. 259, 57 So. 809 ..........................   20

*In Re Fabricators, Inc.,* 926 F.2d 1458, 1464 (5th Cir. Miss. 1991) ......   9,12

*In re CPDC, Inc.,* 337 F.3d 436, 441 (5th Cir. 2003).............................   12

*In re Wyatt & McAlister PLLC*, Cause No. 20090-90-B,
Chancery Court of Madison County, Mississippi................................   21,22,24

*In re Highley*, 459 F.2d 554, 555 (9th Cir. 1972) ................................   26

*In re America West Airlines,*
40 F.3d 1058, 1059 (9th Cir. 1994) .....................................................   26

*In re ICLNDS notes Acquisition, LLC,*
259 B.R. 289, 294 (N.D. Ohio 2001) .....................................................   26

*McNamee v. Dep't of the Treasury,*
488 F. 3d 100, 111 (2nd Cir. Conn. 2007) ................................................. 19

*Mission Residential, LLC v. Triple Net Properties,*
275 Va. 157, 161 654 S.E.2d 888, 891 (2008)...................................... 10

*Mississippi State Tax Comm'n v. Hinton,*
218 So. 2d 740 (Miss. 1969) ............................................................... 10

*Rain Bird Corp. v. Nat'l Pump Co.,*
2003 U.S. Dist. LEXIS 26792 (N.D. Miss 2003)................................... 8

*Pateley Associates I, LLC v. Pitney Bowes,*
2010 U.S. Dist. LEXIS 31536 (D. Conn. 2010).......................................... 19

*Quitman County v. Turner*, 196 Miss. 746, 759-60,
18 So. 2d 122 (1944) ................................................................................. 19,20

*Sheffield v. Reece*, 201 Miss. 133,
28 So. 2d 745 (Miss. 1947) ...................................................... 20

*Zeigler v. Zeigler*, 174 Miss. 302, 164 So. 768 (1935) ........................... 20

## STATUTES AND OTHER AUTHORITIES

Miss. Code § 79-29-207(1) (2) ...................................................... 10,21,22,23

Miss. Code Ann. § 79-29-307(3)(Rev. 1997)(tier two)............... 9,11,12,19,21

Miss. Code § 79-29-701 ...................................................... 7

Miss. Code § 79-29-702 ...................................................... 1

Miss Code Ann. § 79-29-801................................. 10,21,23

Miss. Code Ann. § 79-29-802................................. 10,21,22,23

Miss. Code Ann. § 79-29-803................................. 10,21,22

Miss. Code Ann. § 79-29-803(1) .............................................. 22

Colorado Revised Statutes, 7-80-603 ....................................... 25

California Corporate Code § 17252.......................................... 12

Florida Statutes § 608.427.............................................................   11

Massachusetts Ann. Laws, GL 156C, § 36 ...............................   11

Minnesota Statutes § 322B.306.................................................   11

Nevada Rev. Statutes § 86.331 ..................................................   12

Ohio Ann. Statutes, ORC Ann. 1705.15 .......................................   12

Colliers on Bankruptcy ("Colliers") § 8006.03 (2007)..............   27

Bankruptcy Rule 8006................................................................   26

## REBUTTAL ARGUMENTS

I.  **McAlister's assertion that the Bankruptcy Court "correctly concluded" that the Mississippi Limited Liability Company Act ("Ms LLC Act") required her approval vote for W&M to file its bankruptcy petition, is meritless and without support, legally or factually.**

II. **McAlister's assertion that the Bankruptcy Court "correctly concluded" that McAlister's resignation as an attorney employed by W&M was not intended by McAlister to be a voluntary withdrawal from the membership of W&M, and was "correct in concluding" that McAlister was statutorily barred from voluntarily withdrawing as a member of W&M, is meritless and without support, legally or factually.**

## INTRODUCTION

It is critically important in this appeal that the context of disputes between W&M and Wyatt aligned on the one hand, and McAlister on the other, be understood and grasped.  The bankruptcy case itself needs clarification.

First, Wyatt & McAlister PLLC is the Debtor in this case, and the LLC entity that filed a Chapter 7 petition under federal bankruptcy law.  Wyatt, a member-manager of W&M, is not the Debtor, nor is McAlister, a member who unlawfully defected from the Debtor LLC three hundred thirty-five (335) days prior to the filing.  Neither Wyatt nor McAlister own any of the property of the Debtor.  By statute, the assets of W&M, a separate and distinct entity under law, belong solely to the limited liability company itself.  *See* Miss. Code § 79-29-701 ("A limited liability company interest is personal property.  A member has no interest in specific limited liability property.")  [Underline added].

Secondly, based on McAlister's own averments, she has at all material times been a member in two LLC's with directly conflicting interests.  McAlister claims to be a member in both W&M, and at the same time, "Nutt & McAlister PLLC," an LLC

which because of her actions, is in direct conflict with the rights, assets and property owned and claimed by W&M.  Every action taken or asserted by McAlister adverse to the Debtor W&M's interests, or the interest of Wyatt as its member-manager, whether before the freeze-out and bad faith dissolution of W&M, or during the course of resulting legal proceedings she caused, has been asserted or taken by McAlister while she claimed to be member of two LLC's having abjectly conflicting interests.

The consequence of this is that McAlister's actions are unlawful, void and of no effect unless she can sustain the burden of showing that the actions were ratified after full and continuing disclosure of material facts, approved by LLC vote, or if not required to be voted upon, were inherently fair to W&M and Wyatt.  *See Rain Bird Corp. v. Nat'l Pump Co.*, 2003 U.S. Dist. LEXIS 26792 (N.D. Miss 2003) [citing *Ellzey v. Fyr-Pruf, Inc.*, 376 So.2d 1328, 1332 (Miss. 1979)].

McAlister's efforts to defeat the Chapter 7 filing, tainted by her irreconcilable conflict of interest, are adverse to the Debtor LLC itself, and in derogation of the Debtor's unqualified right as a separate and independent entity to advice of counsel and adequate representation.   By giving McAlister—a defaulted member who perpetrated a freeze out and unlawful withdrawal from W&M—unqualified veto power over the petition, the Bankruptcy Court effectively deprived W&M of its guaranteed right as a separate entity to advice of counsel and adequate representation.[1]  *See e.g, Mission Residential, LLC v. Triple Net Properties, LLC*, 275

---

[1]   The rationale for permitting LLC's to file bankruptcy holds that LLC's, like corporations, are "persons" under the law.  *See Gilliam v. Speier* (*In re KRSM Props., LLC*), 318 Bankr. 712, 717 (B.A.P. 9th Cir. 2004); *In re Calhoun*, 312 Bankr. 380, 383 (Bankr. N.D. Iowa 2004); *In re ICLNDS Notes*

Va. 157, 161 654 S.E.2d 888, 891 (2008) ["a limited liability company is a legal entity entirely separate and distinct from the shareholders or members who compose it."]; *see also, Flippo v. CSC Associates III, L.L.C.,* 262 Va. 48, 56-57, 547 S.E.2d 216, 221 (2001). In other words, both W&M's and Wyatt's rights are in effect being annulled by judicial fiat unduly rewarding McAlister for successfully gaming the judicial system.

Viewed in this context, it is hoped that the District Court will focus on the Bankruptcy Courts' protective role as it relates to debtors, creditors, and the Court's long standing recognition as a court of equity. *See In Re Fabricators, Inc.*, 926 F.2d 1458, 1464 (5th Cir. Miss. 1991.

McAlister recites as a statement of "fact" an excerpt from her so-called "Resignation Letter," along with the Bankruptcy Court's conclusion that "the clear intent" of the letter was to resign employment with W&M, and maintain "her status as a member of W&M." *See* McAlister's Brief at p. 12.

Being nothing more than a semantic circumvention tactic, both Wyatt and W&M deny that McAlister's so-called "resignation" letter is a true factual account of her intentions. The Bankruptcy Court's ruling allowed McAlister to circumvent the proscription in section 79-29-307(3), condoning the specious claim that she "resigned" employment rather than unlawfully withdrew.

---

*Acquisition, LLC*, 259 Bankr. 289 (Bankr. N.D. Ohio 2001). The 2010 landmark decision of the United States Supreme Court in *Citizens United v. Federal Election Commission,* 130 S.Ct. 876 (2010), extended corporation's rights as separate legal entities to include first amendment protections of free speech.

The Bankruptcy Court cited no authority in the Ms LLC Act permitting a member to "resign" from a default LLC such as W&M, in any capacity.   Indeed no authority could be cited because there is no provision in the Ms LLC Act permitting a member to "resign," or to put it more appropriately, "withdraw," prior to complying with the orderly and appropriate dissolution procedures under the Act.  *See* Miss. Code § 79-29-803 (1994), read *in pari materia* with Miss. Code § 79-29-801 (Rev. 1997); Miss. Code § 79-29-802 (Rev. 1997); and Miss. Code § 79-29-207(1)(2) (Rev. 1997).

As early as 1970, the Mississippi Supreme Court denounced the practice of circumventing statutes and laws by word games, holding that words in statutes must be given their popular, dictionary meaning.[2]  *See Dennis v. Travlers Ins. Co.*, 234 So.2d 624 (Miss. 1970) (litigant's refusal to characterize a letter as an act of "menace," and thus style the case as an intentional tort, was held to be a circumvention of the one year statute of limitations); *see also*, *Caldwell v. N. Miss. Med. Ctr.*, 956 So. 2d 888, 893-894 (Miss. 2007) (stating ". . . to conclude otherwise would render Miss. Code Ann. § 11-1-58(7) meaningless if the requirements of Miss. Code Ann. § 11-1-58(7) could so easily be circumvented."); *see also*, *Evans v. Boyle Flying Serv., Inc.*, 680 So.2d 821, 825 (Miss. 1996).  After ascribing the popular, dictionary meaning of words, courts must then glean from the statute the legislative intent.  *See Mississippi State Tax Comm'n v. Hinton*, 218 So. 2d 740 (Miss. 1969).

To ignore the plain meaning of the word "resign" as a common synonym for "withdraw," especially when the choice of word was so obviously calculated to

---

[2]  According to Burton's Legal Thesaurus, 3rd Edition, 1998, "resign" is synonymous with "withdraw."

sidestep the withdrawal proscription of section 79-29-307(3), is tantamount to condoning unlawful pre-dissolution withdrawal, thus undermining the very purpose of having the proscription of section 79-29-307(3) in the LLC Act.

The Bankruptcy Court failed to consider and evaluate that the two words "resign" and "withdraw" are even used interchangeably in parallel state statutes addressing pre-dissolution withdrawal.  The word "resign" is used as a substitute for "withdraw" in numerous LLC statutes.  For example, the parallel LLC statute in Florida makes no distinction between "withdraw" and "resign," and uses the two words interchangeably:

Fla. Stat. § 608.427

> (1) A member may *withdraw* from a limited liability company only at the time [. . .] and in accordance with the articles of organization or operating agreement. Notwithstanding [. . .] unless the articles [. . .] or operating agreement provide otherwise, a member may not *resign* [. . .] prior to the dissolution or winding up [. . .].

*Id.* [Italics added].

The parallel statute in Massachusetts uses "resign" as a substitute for the more commonly used "withdraw" or "withdrawal." Entitled "Resignation of Member; Damages for Breach of Operating Agreement," Massachusetts' Ann. Laws of Mass., GL 156C, § 36 provides in pertinent part:

> A member may *resign* as a member of a limited liability [. . .]. An operating agreement may provide that a member shall not have the right to *resign* [. . .].

*Id.* (Italics added).

Minnesota uses the terms "resign" and "retire" interchangeably in its parallel statute entitled "Termination of a Membership Interest."  *See* Minn. Stat. § 322B.306.

California's statute, entitled "Withdrawal of member; Notice; Entitlement to distribution," employs the phrase "withdraw, resign or retire," treating all three terms as synonyms.  *See* Cal. Corp. Code, § 17252.   Nevada uses the terms "withdraw" and "resign" as synonyms.  *See* Nev. Rev. Stat. Ann. § 86.331, captioned "Resignation or withdrawal of member; payment to member who rightfully resigns or withdraws."  *See also* the Ohio statute, ORC Ann. 1705.15 using "resign or withdraw."

When the evidence of McAlister's pre-withdrawal conduct is objectively weighed, and coupled with the proscription in section 79-29-307(3) making it unlawful for any LLC member to withdraw before dissolving the LLC according to statutory procedure, the error in the Bankruptcy Court's decision is patent and clear.  Even if the Bankruptcy Court's conclusion is characterized, albeit wrongly, as "fact" reviewable under the clearly erroneous standard, since it is premised on an improper legal standard, it loses the insulation of the clearly erroneous rule.  *In Re Fabricators, Inc.*, 926 F.2d 1458, 1464 (5th Cir. Miss. 1991).  Moreover, the District Court applies a standard of de novo review as mixed questions of law and fact.  *In re CPDC, Inc.*, 337 F.3d 436, 441 (5th Cir. 2003).

The Bankruptcy Court's decision that McAlister merely "resigned" and maintained her member interest is premised on an improper and erroneous legal standard.  The Bankruptcy Court holding is based on the premise that section 79-29-307(3) (Rev. 1997) (tier two) made it impossible for McAlister to unlawfully withdraw, regardless of her intentions.

For this interpretation to withstand appellate scrutiny, there must be no instance in the LLC Act where a member can by their own volition, dissociate and end their membership.  To the contrary, there are at least two instances where a member can in a default LLC, can effect a withdrawal, dissociation, and put an end to their membership.  First, a member in a default LLC like W&M can assign his interest, and the assignment terminates membership.  *See* Miss. Code Ann. § 79-29-702.  If a member elects to assign his entire LLC interest, "he ceases to be member." *Id*.  Clearly, an assigning member has the "power" to effect withdrawal.

Secondly, when the right to appraisal attaches to a LLC member's interest, the voluntary exercise of the right terminates a member's interest.  In pertinent part, the appraisal statute states: "once a person deposits that person's certificates, or, in the case of uncertificated interests, returns the executed forms, that member or owner of a limited liability company interest loses all rights as a member or owner of a limited liability company interest . . ." *See* Miss. Code Ann. § 79-29-214(6)(a)(Rev. 2000).  Again, by their own act, member in a default LLC has the "power" to effect withdrawal.

Both Wyatt and W&M dispute the validity of the Bankruptcy Court's conclusion that McAlister intended to resign from "employment" and maintain "her status as a member of W&M."  As documented in Exhibits 1-40, McAlister perpetrated a textbook freeze-out of Wyatt's LLC interest, unlawfully deserted W&M in violation of a statutory proscription, and caused its insolvency, all in retaliation

for Wyatt calling into question past accrued attorneys fees owed by Nutt and McAlister.[3]

The actual facts revealing McAlister's true intentions are that, after W&M began operating, in November and December 2009, Wyatt wrote Nutt's CFO Ernie Coward ("Coward"), and copied McAlister, requesting information concerning unpaid attorney fees accrued to Wyatt from cases settled before W&M's formation. (Tr. Ex. D-18; Tr. Ex. D-19, letter).   Along with Nutt, McAlister was jointly responsible for Wyatt's unpaid fees.  Neither Coward nor McAlister ever responded to either of Wyatt's letters.

Though unknown to Wyatt until weeks after McAlister deserted W&M, the letters prompted McAlister to enter a conspiracy with Coward as early as December 21, 2008, and formulate a plan based on accounting fraud and underhanded tactics, to dilute or defeat Wyatt's right to payment of the withheld fees. (Tr. Ex. D-20, memo).  Weeks after McAlister deserted W&M, Wyatt discovered a December 23, 2008, memo on the firm's computer server documenting a McAlister-Coward conversation.  (Tr. Ex. D-20, memo).  The memo documents that sixteen days before McAlister ostensibly suggested an "amicable" dissolution to Wyatt, McAlister

---

[3]  This is by no means the first instance of McAlister or Nutt oppressing financially weaker attorneys who unwittingly entered fee sharing agreements with them, or with them and their business partner Dickie Scruggs.  Their use of oppressive tactics has become so common the phrase "fee stripping" has been coined.  McAlister, Nutt and/or Scruggs have been sued numerous times in Mississippi for fee stripping.  *See e.g.*, *Jones, Funderburg, et al v. Scruggs, Nutt, Scruggs Law Firm, Nutt & McAlister et al*, Circuit Court of Lafayette County, Civil Action No. L07-135; *Luckey v. Scruggs et al*, (citation omitted); *William Roberts Wilson, Jr. et al v. Scruggs*, (citation omitted); *Pearson v. David Nutt & Associates, P.C.*, *Nutt & McAlister, et al*, (citation omitted); *Mercier v. David Nutt, P.A., Nutt & McAlister et al*, (citation omitted).  *See also*, *Wyatt v. Scruggs, Nutt, McAlister et al*, Circuit Court of Lafayette County, Miss., Civil Action no. L09-260.

privately talked with Nutt's CFO Coward, and engaged in a conspiracy to devaluate the amount of fees owed to Wyatt.[4]

In pertinent part, McAlister's memo of the McAlister-Coward conversation reads:

> Ernie called me [. . .] about DW's demand letter [. . .].  By Ernie's calculations, N&M has about $71-73,000 to offer DW, assuming we retrieve our interest in the 2 CDs [. . .]. I brought up [sic] issue of N&M having paid all legal bills for Maria Brown and Doug Mercier.  Ernie indicated he does not want to divide those bills among PA, PC and N&M as it 'would increase the amount that Derek would receive.'
>
> . . .
>
> [. . .] DW fully understood and admitted to me on numerous occasions that he is entitled to 10% of NET fees [. . .] I'm going to record him making that admission.

(Tr. Ex. D-20, memo).  The memo proved not only that McAlister and Coward admitted fees were owed to Wyatt—though nowhere near the amounts[5] actually due—but more importantly, confirmed that their discussion included falsifying accounting records, and secretly tape recording Wyatt as part of a scheme to induce false admissions.  (Tr. Ex. D-20, memo).

McAlister and Coward spoke of the "Maria Brown" and "Doug Mercier" lawsuit costs.  (Brown and Mercier, former employees of McAlister and Nutt, had

---

[4] Desperate to keep the memo away from the eyes of this Court, the Bankruptcy Court, and the Chancery Court, of late McAlister has resorted to arguing that Wyatt "stole" the document.  While it is difficult to comprehend how Wyatt could "steal" a document from his own law firm's server, the document would be admissible under any number of theories, not the least of which is crime-fraud exception codified in Rule 502 (d)(1), Miss. R. Evidence.  McAlister has no valid basis for claiming that she possessed a right of privacy in a document, created and stored on W&M's computer system, evidencing her intent to commit accounting fraud against a co-member.

[5] The $71-73,000 figure mentioned in McAlister's memo bears no rational relation to the total fees actually owed to Wyatt.  *See Wyatt v. Scruggs, Nutt, McAlister et al*, Lafayette County Circuit Court, Cause No. L09-260, pleading an *ad damnum* amount exceeding 1 million dollars in actual damages.

sued McAlister and Nutt in separate cases, later settled out of court).  Coward and McAlister knew the legal bills for the "Maria Brown" and "Doug Mercier" lawsuits were improperly booked 100% to Nutt & McAlister.   (Tr. Ex. D-20 memo). McAlister in fact had previously complained that the costs were improperly booked, and the two agreed that the items needed to be pro-rated to Nutt's PC and PA firms.  (Tr. Ex. D-21 memo stating: "Ernie needs to adjust the allocation of defense costs for the Maria Brown and Doug Mercier lawsuits to PC and PA as we previously discussed.").

However, when it came to dealing with Wyatt's fee request letters, McAlister and Coward ignored the accounting error, intending to falsely dilute the fees owed to Wyatt by leaving the costs improperly booked.  In her memo McAlister stated that Coward "[did] not want to divide those bills among PA, PC and N&M as it 'would increase the amount that Derek would receive.'" (Tr. Ex. D-20).  [Underline added].

Though Wyatt had no knowledge at this time of McAlister's talks with Coward, or the secret memo, sometime prior to January 7, 2009, McAlister decided to demand that Wyatt agree to what she called an "amicable" dissolution of W&M, coupling the demand with an ultimatum and threat that she would "resign."

On January 7, 2009, two days before deserting W&M, McAlister sent an email to Wyatt stating: "I have repeatedly asked you if you are willing to amicably dissolve W&M . . . I hereby give you until 5:00 PM on Friday, January 9, 2009 to respond . . ." (Tr. Ex. D-16).  McAlister's email went on to threaten: "If I do not receive your response by that deadline, then I will resign as an employee of W&M, while retaining my 50% ownership interest in W&M." *Id.*

Wyatt responded by asking that McAlister furnish a written dissolution proposal if she had one, and reminded her that the ultimatum was retaliatory, and thus a breach of fiduciary duty. (Tr. Ex. D-16).  As her actions proved 24 hours later, if Wyatt refused to acquiesce to the ultimatum, McAlister intended to desert and defect from the LLC with a single objective in mind—to cut off funding, cause insolvency and force W&M into dissolution.  In legal parlance—especially apropos to closely-held entities like W&M—McAlister intended to perpetrate a "freeze-out."

An objective analysis of the evidence in Exhibits 1-40 exposes that the Bankruptcy Court's conclusion that McAlister's true intent was resignation, strains the bounds of rational thought.  Consider the following facts, none of which have been disproven by McAlister.

Before McAlister sent the January 7th email ostensibly claiming that she wanted to "amicably dissolve" W&M,[6] she had already proceeded to loot W&M through a series of collusive acts carried out behind Wyatt's back and of course never approved or ratified by a vote of W&M's members.  If her true intent was to merely "resign" because Wyatt failed to acquiesce and "amicably" dissolve W&M, why did McAlister:

- secretly transfer seven of the firm's Avandia cases under fraudulent referral letters <u>two days before</u> requesting the ostensibly "amicable" dissolution of W&M; (Tr. Ex. D-40; Tr. Ex. D-38; Tr. Ex. D-39);

- alter W&M's accounting records by collusively changing $75,000 in capital contributions to (undocumented) loans, <u>two days before</u> requesting the ostensibly "amicable" dissolution; (Tr. Ex. D-23, p. 1);

---

[6] For brevity, McAlister's January 7, 2009, email and ultimatum, is sometimes referred to as the "amicable dissolution" email.

- secretly attempt to alter and convert a $400,000 life insurance policy belonging to W&M, <u>four days prior</u> to requesting the ostensibly "amicable" dissolution; (Tr. Ex. D-34, agent letter; Tr. Ex. D-33, email);

- unilaterally block Wyatt's access to the firm's computer system and client files <u>several days prior</u> to requesting the ostensibly "amicable" dissolution; (Tr. Ex. D-24, Tr. Ex. D-16).

And looking back even earlier, if McAlister's true intention was to merely "resign," why did she conspire, <u>sixteen days prior</u> to her "amicable" dissolution email, to cheat Wyatt out of past-accrued attorney fees by accounting fraud.  (Tr. Ex. D-20).  Why did McAlister conspire, <u>sixteen days prior</u> to the sending her "amicable" dissolution email, to secretly tape record Wyatt as part of a scheme to extract false admissions concerning the unpaid fees.  (Tr. Ex. D-20).   Why did McAlister arrange, in advance of sending her "amicable" dissolution email, to have Nutt's hired hands seize 90 boxes of client files lawfully in the possession of W&M, nearly precipitating a breach of the peace, and resulting in intervention by the Ridgeland Police Department.  If not to perpetrate freeze-out, cause insolvency and induce bad faith dissolution, why unilaterally waive Nutt's indebtedness to W&M estimated to total $24,377.83, without any vote, ratification or approval vote W&M's members.[7]  (Tr. Ex. D-9, letter and bill to Nutt).

McAlister's so-called "resignation" letter, even if subjected to a literal reading, raises serious doubts of authenticity and legality.  Applying settled LLC law,

---

[7] Nutt defaulted and never paid W&M PLLC the $12,377.82 on the first bill he owed.  While acting as a member-manager of W&M, McAlister unilaterally, and without Wyatt's knowledge or consent, or a vote of the members, waived payment of this debt.  Acting in her capacity as a member-manager of W&M, McAlister made sure the second invoice due from Nutt, estimated at $12,000.00, was never prepared and sent.

McAlister had no "employment" to resign from W&M.  McAlister never received a single wage or salary payment from W&M.  McAlister had no contract of employment with W&M.  No employee taxes were ever paid or withheld on McAlister, nor were any required because W&M never elected to be taxed separately as a corporation.  In a default LLC such as W&M, members are treated as partners, and are not employed by the LLC in which they have membership.  *See e.g.*, *Pateley Associates I, LLC v. Pitney Bowes*, 2010 U.S. Dist. LEXIS 31536 (D. Conn. 2010); *McNamee v. Dep't of the Treasury*, 488 F. 3d 100, 111 (2nd Cir. Conn. 2007).

These established legal principles were never evaluated or even addressed in the Bankruptcy Court's conclusion that "the clear intent" of the McAlister's letter was to resign "employment" and maintain "her status as a member of W&M."

McAlister and her Brunini lawyers personally criticize Wyatt for stating the Bankruptcy Court's interpretation of Section 79-29-307(3) leads to an "absurd" result.  Facetiously attempting to paint Wyatt as disrespectful of the Bankruptcy Court, they imply that the word "absurd" was selected to level a personal criticism upon the Court.  This is yet another false representation, and failure to be honest, candid and forthright with the District Court in presenting the case.

The Mississippi Supreme Court has long held that in cases of statutory interpretation, the "polestar" consideration is legislative intent, and as a corollary, an interpretation that yields absurd or unjust results is presumptively inconsistent with legislative intent.  In the 1944 case *Quitman County v. Turner*, the Mississippi Supreme Court stated: "[i]t is our duty to support a construction which would purge the legislative purpose of any invalidity, absurdity or unjust inequality."  *Id.* 196

Miss. 746, 759-60, 18 So. 2d 122 (1944); see also, *City of Jackson v. Lakeland Lounge of Jackson, Inc.*, 688 So. 2d 742, 747 (Miss. 1996) [quoting *Quitman County v. Turner*, *supra*).

 As attorneys, McAlister and her counsel are charged with constructive if not actual knowledge of Mississippi case law.  Fifteen minutes on Westlaw or Lexis would reveal that the "absurd results" doctrine, often coupled with the "unjust results" doctrine, is abundantly quoted in opinions of the Mississippi Supreme Court as well as other jurisdictions.  *See Sheffield v. Reece*, 201 Miss. 133, 28 So. 2d 745 (Miss. 1947) (courts must avoid absurd results when construing statutes); *see also Dawson v. Townsend & Sons, Inc.*, 735 So. 2d 1131, 1140 (Miss. Ct. App. 1999) (citing *Sheffield v. Reece, supra*) ("courts need to understand the possible effects in order not to interpret the statute in such a way as to cause absurd results"); *Kennington v. Hemingway*, 101 Miss. 259, 57 So. 809 ("Legislators must be presumed to be reasonable and sane men [. . .] the natural, direct, and probable consequences of their acts [. . .] shall not be absurdly or unreasonably construed"); *Quitman County v. Turner*, 196 Miss. 746, 759-60, 18 So. 2d 122 (1944) ("It is our duty to support a construction which would purge the legislative purpose of any invalidity, absurdity or unjust inequality."); *City of Jackson v. Lakeland Lounge of Jackson, Inc.*, 688 So. 2d 742, 747 (Miss. 1996) (citing *Quitman County v. Turner, supra*); *Evans v. Boyle Flying Serv., Inc.*, 680 So. 2d 821, 825-26 (Miss. 1996) ("unthought of results must be avoided if possible, especially if injustice follows"); *Zeigler v. Zeigler*, 174 Miss. 302, 164 So. 768 (1935) (a statute "must be construed to avoid unthought of and unjust results.").

The Bankruptcy Court's interpretation of Miss. Code § 79-29-307(3) leads to absurd and unjust results by undermining the purpose of the LLC statutes, which is to compel members in a default LLC to follow the orderly and appropriate dissolution procedures under the Act before withdrawing.  *See* Miss. Code § 79-29-803 (1994), read *in pari materia* with Miss. Code § 79-29-801 (Rev. 1997); Miss. Code § 79-29-802 (Rev. 1997); and Miss. Code § 79-29-207(1)(2) (Rev. 1997). Additionally, the ruling leads to absurd and unjust results because it opens the door for any LLC member to unlawfully defect in direct violation of the section 79-29-307(3) proscription with impunity.  Even more absurd and unjust, under the Bankruptcy Court's interpretation, the defecting and estranged member may continue to exercise veto power of the LLC's affairs, and demand 50% of the profits while contributing nothing.

When McAlister supposedly "resigned," 335 days prior to the Bankruptcy filing, W&M had not been dissolved.  Nor for that matter has W&M ever been dissolved.  *See In re Wyatt & McAlister PLLC*, Cause No. 20090-90-B, Chancery Court of Madison County, Mississippi.  Under the LLC Act as applied to W&M, there are two ways W&M may be dissolved; either nonjudicially i.e. by consent, or judicially, by chancery decree ordering a judicial dissolution.  *See* Miss. Code § 79-29-801(c) (1994) (nonjudicially, by consent); Miss. Code § 79-29-802 (1994) (judicially, by court decree).

If dissolved nonjudicially, all members must consent and a written, signed certificate of dissolution must be filed with the Secretary of State.  See Miss. Code § 79-29-801(1) (Rev. 1997) and Miss. Code § 79-29-207(1) (Rev. 1997).  Assuming

the Secretary of State finds the certificate acceptable and files it, the LLC's certificate of formation is deemed dissolved or canceled as of the Secretary's date of filing. *See* Miss. Code § 79-29-207(2) (Rev. 1997). W&M has never prepared or filed a certificate of dissolution with the Secretary of State.

In the case of judicial dissolution, the chancery court must first conduct a hearing, and then enter a decree of dissolution after ruling upon the alleged grounds enumerated in the statute. *See* Miss. Code § 79-29-802 (1994). After McAlister deserted W&M leaving the firm an insolvent shell, burdened with debt exceeding $141,000.00, Wyatt filed for judicial dissolution alleging *inter alia* the statutory grounds listed in Miss. Code § 79-29-802(b), i.e., that McAlister was guilty of (i) persistent and pervasive fraud; or (ii) abuse of authority; or (iii) persistent unfairness towards another member; or (iv) misapplication or waste of property. *Id. See In re Wyatt & McAlister PLLC*, Cause No. 20090-90-B, Chancery Court of Madison County, Mississippi.

No hearing on the merits has ever been conducted in the matter styled *In re Wyatt & McAlister PLLC,* nor has a decree of dissolution ever been entered. *Id.* Likewise, no winding-up of an LLC can begin until a statutory dissolution under one of the two procedures has been completed. *See* Miss. Code § 79-29-803 (1994) read *in pari materia* with Miss. Code § 79-29-801 (Rev. 1997); Miss. Code § 79-29-802 (Rev. 1997); and Miss. Code § 79-29-207(1)(2) (Rev. 1997).

At a minimum, statutory judicial dissolution requires a hearing on the merits, entry of a Chancery decree, and the filing of the decree with the Secretary of State.

No dissolution is effective until the statutory requirements are met. *See* Miss. Code §

79-29-207(1)(2) (Rev. 1997).

As a Mississippi licensed attorney subject to the Rules of Professional

Conduct and applicable ethics opinions, McAlister and her attorneys are charged

with knowing and complying with the law governing judicial dissolution procedure

which in pertinent part requires:

- first, and before adjudicating ownership rights in any LLC property or assets, the Court must holding a hearing on the merits of the application for judicial dissolution to determine if a decree of dissolution should issue or not under Miss. Code 79-29-802;

- second, assuming a dissolution decree is issued, filing of the dissolution decree must be made with the Secretary of State's office in the manner set forth under Miss. Code 79-29-207(2);

- third, after filing the dissolution decree, it must be confirmed that the Secretary of State has dissolved the LLC's certificate of formation in the manner set forth under Miss. Code 79-29-207(2); and

- fourth, after meeting the above requirements, the LLC's affairs "must be wound up" as set forth under Miss. Code 79-29-801 and subpart (e) thereof.

Forever trying to game the system—clearly evidenced by the semantic

circumvention of the withdrawal statute—McAlister and her Brunini lawyers

conjured-up a plan to derail the judicial dissolution proceeding, and prevent the

Chancery Court from ruling on the averments of persistent and pervasive fraud;

abuse of authority; persistent unfairness towards another member; and

misapplication or waste of property.

Prior to the Bankruptcy filing, McAlister and her attorneys contacted the

Special Master assigned to the judicial dissolution case, and induced him to deviate

from the statutory protocol, forgo a hearing on the merits, and immediately conduct a so-called hearing to "determine" the assets of W&M.  To no avail, Wyatt objected, raising *inter alia* the fact that a hearing to determine assets, before any decree was entered dissolving W&M, was premature and a clear deviation from the statutory protocol.  *See In re Wyatt & McAlister PLLC*, Cause No. 20090-90-B, Chancery Court of Madison County, Mississippi.

Just as the motion to dismiss the bankruptcy petition was designed to prevent that Court's review of Exhibits 1-40, McAlister's aim in the judicial dissolution case was to get the Special Master to bypass the statutory hearing requirement, thus preventing an evidentiary record by keeping Exhibits 1-40 away from the Chancery Court's eyes.  By hurriedly distributing the assets of W&M, the case would be arguably moot by the time Wyatt and W&M caught up to McAlister's scheme, and filed their objections.

Secondly, McAlister and her Brunini lawyers persistently sought to prevent W&M from being joined as a party in its own dissolution proceeding, or being represented by separate counsel.  *See In re Wyatt & McAlister PLLC*, Cause No. 20090-90-B, Chancery Court of Madison County, Mississippi.  Post hearing, Wyatt objected to each of these stratagems, and filed among others, a motion to stay and vacate, a motion to join W&M, and a motion for summary judgment.  *Id.*

If the Bankruptcy Court's interpretation of Mississippi LLC law is correct, the LLC is itself without recourse against a member-in-breach, and its constitutionally guaranteed rights are thwarted by the absurd and unjust holding that no remedy can be exercised without the breaching member's approval, even in the face of

flagrant, bad faith dissolution and asset conversion.  (Some LLC statutes directly address similar situations; *see e.g.,* Colorado Rev. Statute 7-80-603, stating in pertinent part: "[a] member who has resigned or withdrawn shall have no right to participate in the management of the business and affairs of the limited liability company . . . ").

Even more disturbing, the Bankruptcy Court failed to address how an LLC's constitutionally guaranteed right to advice of counsel can be preserved, much less exercised, when a member-in-default is accorded an unqualified veto power over the LLC's right to redress the very situation the defaulting member created.

Obligated as any citizen to abide by the rule of law, and further as an attorney who must obey the standards of professional conduct, McAlister is charged with knowledge of this extreme, irreconcilable conflict of interest.   Unfazed, she continued to renounce and appropriate W&M's property and interests, in order to accrue personal profit and gain as a member of Nutt & McAlister.

Constituting conversion and fraud, McAlister has expended untold sums to prevent judicial review of this act and other fraudulent acts, both at the Chancery Court level in the judicial dissolution case, and in this bankruptcy proceeding. Satisfied that she has successfully stalemated judicial review by gaming the system at both courts, even today McAlister continues to renounce and appropriate W&M's property and interests, in order to profit and gain as a member of Nutt & McAlister. Wyatt recently learned that McAlister referred or transferred the interest of another W&M client listed on the firm's records, ("Barkley, Hal Oil & Gas, file number 403") to a third party law firm.  (Tr. Ex. D-36).  Barkley's interest has been included in a

federal class action styled *Davis et al v. Chesapeake Appalachia, LLC et al*, Civil Action No. 1:10-cv-23, (W.D. Va 2010).

A corporation, and by analogy, an LLC, are entitled and in fact required to be represented by separate and independent counsel.  See, e.g., *In re Highley*, 459 F.2d 554, 555 (9th Cir. 1972) (corporation may only appear in a court proceeding through an attorney); *Foley v. Allied Interstate, Inc.*, 312 F. Supp. 2d 1279, 1283 (C.D. Cal. 2004) ("It is well established that corporations may appear in federal court only through licensed counsel."); *In re America West Airlines*, 40 F.3d 1058, 1059 (9th Cir. 1994) ("Corporations and other unincorporated associations must appear in court through an attorney."); see also *In re ICLNDS notes Acquisition, LLC*, 259 B.R. 289, 294 (N.D. Ohio 2001) (limited liability company does not have capacity to represent itself).

McAlister contends that the source law supporting the Bankruptcy Court's allegedly "correct" conclusion is the Ms LLC Act itself.  The Bankruptcy Court could not have "correctly concluded" the filing issue by reference to authority in the Ms LLC Act because the Act contains no provision even addressing bankruptcy.  *Id.*  Nor for that matter does the Bankruptcy Code support the conclusion—LLC's are nowhere mentioned in the federal Bankruptcy Code.[8]

Finally, it should come as no surprise that McAlister is still to this moment trying to keep Exhibits 1-40 away from reviewing courts.  It is axiomatic that the

---

[8] The unincorporated LLC, a hybrid model newly-created from partnership and corporate law, is yet to be integrated in the Bankruptcy Code.  *See* Title 11, United States Code, §§ 101 *et seq*.  The rationale for permitting LLC's to file bankruptcy holds that LLC's, like corporations, are "persons" under the law.  *See e.g., Gilliam v. Speier* (*In re KRSM Props., LLC*), 318 Bankr. 712, 717 (B.A.P. 9th Cir. 2004).

District Court can and should consider the entire designated record that is properly before it on appeal.  Bankruptcy Rule 8006 provides that "[t]he record on appeal shall include the items so designated by the parties, the notice of appeal, the judgment, order, or decree appealed from, and any opinion, findings of fact, and conclusions of law of the court."  Exhibits 1-40 were items designated by Wyatt and W&M's counsel to be included in the record on appeal pursuant to the foregoing rule.[9]  According to one leading bankruptcy treatise, "the record on appeal should consist of the pleadings, papers, and exhibits . . . filed . . . which gave rise to the appeal."  Colliers on Bankruptcy ("Colliers") § 8006.03 (2007).

## CONCLUSION

The precedent set by the Bankruptcy Court in this case undermines and virtually destroys the purpose and policy legislative of the Ms LLC Act.  It is patently erroneous in its interpretation of Miss. Code § 79-29-307(3) (Rev. 1997) (tier two) and leads to unjust and absurd results in numerous ways.  As such, the decision should be reversed.

This the 25th of February, 2011.

Respectfully submitted,

**DEREK A. WYATT**, an interested party filer and member-manager of WYATT & McALISTER, PLLC, appearing *pro se*,

By: /s/ Derek A. Wyatt, *pro se*

---

[9] Inexplicably, the designated exhibits were not initially transmitted by the Bankruptcy Court to the District Court when the record was sent up on appeal.  Discovered to be missing from the record when the appeal docket was inspected by Appellant in December 2010, the error was corrected with the courteous help of assistants in the District Court clerk's office.

Derek A. Wyatt, MSB No. 7413

OF COUNSEL:
**WYATT LAW PLLC**
102 Northlake Lane
Madison, MS 39110
Telephone (601) 954-1140
dwyatt@wyattlawpllc.com

## CERTIFICATE OF SERVICE

The undersigned counsel of record, Derek A. Wyatt, *pro se*, for interested party filer **DEREK A. WYATT**, hereby certifies that he served the above and foregoing on the following via the Court's ECF Notification System on February 25th, 2011, to the following:

**Counsel for Wyatt & McAlister, PLLC:**

Vann F. Leonard, Esq. (MSB No. 9611)
578 Highland Colony Parkway, Suite 130
Post Office Box 16026
Jackson, MS  39236-6026
Telephone: (601) 978-1770
Email: vfllaw@bellsouth.net

**Counsel for Mary E. Krichbaum McAlister:**

Lawrence Allison, Esq.
Brunini Law Firm
190 East Captiol Street
P.O. Drawer 119
Jackson, MS 39205-0119
Telephone: (601) 960-6921
lallison@brunini.com

Joseph Sclafani,
Brunini Law Firm
190 East Captiol Street
P.O. Drawer 119

Jackson, MS 39205-0119
Telephone: (601) 960-6921
jsclafani@brunini.com

**Chapter 7 Trustee:**
Stephen Smith
5 Old River Place
Suite 107
Jackson, MS 39202-3449
Telephone:
trustee1@smithcpafirm.com


**Counsel for Chapter 7 Trustee:**

Eileen N. Shaffer, Esq.
401 East Capitol Street
P.O. Box 1177
Jackson, MS 39215-1177
Telephone: (601) 969-3006
enslaw@bellsouth.net

**Counsel for United States Trustee:**

Ronald H. McAlpin, Esq.
for R. Michael Bolen
100 W. Capitol St.
Suite 706
Jackson, MS 39269
Telephone: (601) 965-5241
ronald.mcalpin@usdoj.gov

THIS the 16th day of January, 2010.


By: _/s/ Derek A. Wyatt, *pro se*_____
     Derek A. Wyatt, MSB No. 7413



DEREK A. WYATT, an interested party
filer, and manager-member of WYATT &
McALISTER, PLLC, in good standing;

BY:     s/ Derek A. Wyatt_____
        Derek A. Wyatt, *pro se*
        MSB No. 7413

Derek A. Wyatt, Esq.
MSB No. 7413